SAVINGS AND LOAN SOCIETY *v.* WILLIAM GIBB, Executor, etc., *et al.*—SAME PLAINTIFF *v.* WALKER *et al.*

Where one of two partners executes a mortgage upon his separate property to secure a debt of the firm, an action to foreclose the mortgage may, after the death of the mortgagor, be maintained against his executor, without any showing by the plaintiff that the partnership is insolvent, or that he has pursued his remedy upon the debt against the surviving partner.

In such action, where the surviving partner is also the executor of the deceased partner, and claims as his devisee an interest in the mortgaged property, there is no misjoinder in making him, as an individual, a codefendant with himself as executor.

Appeal from the Fourth Judicial District.

These are separate appeals from judgments of the District Court, entered in favor of the defendants and respondents, upon their demurrers to the amended complaints of the plaintiff, in each of the two cases.

The complaints are precisely similar, and, so far as they bear upon the questions raised upon the appeals, state the following facts :

That, August 31st, 1860, the defendants, William Gibb and Daniel Gibb, now deceased, but then in life, were partners under the firm name of Daniel Gibb & Co., and by their partnership name of Daniel Gibb & Co., borrowed of plaintiff $25,000, to secure payment of which, the said Daniel Gibb & Co. made and delivered to the plaintiff their forty-eight promissory notes, all dated August 31st, 1860, payable to plaintiff, for six hundred and fifty-seven dollars and fifty cents, the first on the thirtieth day of September, and the remainder on the thirtieth day of each month thereafter, one of which is as follows :

" $657 50.              San Francisco, August 31st, 1860.

" On the thirtieth day of October, 1861, without grace, we promise to pay to the Savings and Loan Society or order, at their office, the sum of six hundred and fifty-seven dollars and fifty cents, value received, with interest thereon at the rate of two per cent. per month from maturity until paid. And we further agree that if this note shall not be paid by us according to its tenor and effect, then all the notes of this series bearing even date herewith and remaining unpaid, shall at the option of the Savings and Loan Society become immediately due and payable to the amount of nineteen thousand, three hundred and sixty dollars, which will be their total value at the maturity of and including this note, with interest thereafter on said total value at the rate of two per cent. per month until paid.

" The series of notes of which this is one, is secured by mortgage of even date herewith.        Daniel Gibb & Co."

That of the sums secured by these notes including the above note and interest, the amount of $19,360 remains due and unpaid, and with the interest thereon at the rate of two per cent. per month from October 30th, 1860, is now due and payable.

That Daniel Gibb, in his lifetime, to secure the payment of these notes and the said moneys and interest thereon, as mentioned in the notes according to their terms, at the same time with their date, executed under his hand and seal, and delivered to the plaintiff, a mortgage conditioned for the payment of the notes and interest thereon at the rate, times, and in the manner specified in the notes, and according to their conditions, whereby he mortgaged to the plaintiff all that parcel of land, etc.

That, among other things, Daniel Gibb, by his said mortgage, covenanted and agreed that he would pay at maturity all taxes, street assessments, liens, and other incumbrances then subsisting or which might be laid or imposed on the premises, and all taxes which might at any time be laid upon the mortgage or the money secured thereby; and if default should be made in such payments, the plaintiff might pay off at pleasure any such taxes, street assessments, etc., as in the opinion of the plaintiff might in any wise affect or impair

the mortgage ; and on all moneys paid out for the purposes afore-said, interest should be allowed from the date of the several pay-ments at the rate of two per cent. per month, and such payments and interest should be secured by the mortgage.

That, by the covenants and conditions of the mortgage, it was among other things further agreed, that if default should be made in the payment of any one or more of said notes, or in the perform-ance of any of the covenants, etc., the whole of the notes unpaid at the time should, at the option of the plaintiff, forthwith become due, and legal proceedings forthwith be taken for the foreclosure.

That said Daniel Gibb further covenanted that in such action a receiver should be appointed, etc., with power to collect the rents, etc., until sale of the premises under the decree of foreclosure, and said receiver should hold the same for any deficiency which might exist in case the proceeds of the sale should not be sufficient to pay the amount of the decree and costs, his commissions to be paid out of such rent, etc.

That due demand of the payment of the notes has been made, but Daniel Gibb, in his lifetime, and William Gibb refused, and William Gibb, since the death of Daniel Gibb, still refuses to pay the same, and plaintiff has therefore elected and declared the entire sum to be presently due and payable : of which election and declar-ation William Gibb, executor of Daniel Gibb, and in his own right has had due notice.

That on the seventeenth day of December, 1861, Daniel Gibb departed this life, leaving a last will wherein William Gibb was named sole executor, which was admitted to probate, and letters testamentary were issued to William Gibb, who duly qualified and is now acting as such executor.

That the defendants, William Gibb, Ellen W. J. Gibb, and Thos. M. Gibb, minor son of Daniel Gibb, James Paterson and Alexander Forbes have and claim interests in and rights to the premises as devisees of Daniel Gibb and otherwise, which interests and rights are subsequent to and subject to plaintiff's mortgage.

The plaintiff prays for a receiver, the ascertainment of the amount of all taxes now subsisting, or which may be levied, and that the Sheriff or receiver be directed out of the rents or proceeds of the

property, after paying costs of suit, to pay such taxes, etc., and " that the usual judgment or decree may be made for the sale of the mortgaged premises aforesaid, and for the payment out of the proceeds of said sale, of the amount due the plaintiff for principal and interest on said notes and mortgage, together with costs," and all amounts paid by plaintiff for taxes, etc. ; and if it appear from the Sheriff's return that there is a balance still due plaintiff, after applying all the moneys, etc., " that the said estate of Daniel Gibb may be adjudged to pay such deficiency in due course of adminis- tration thereafter, and that a judgment may be docketed for such balance and duly certified to the Probate Court;" and that the defendants be barred and foreclosed, etc.

The defendants, William Gibb, executor, etc., William Gibb, James Paterson, and Alexander Forbes, each demurred to the com- plaints. The demurrer of William Gibb, as executor, was on the grounds, among others—1st, of a misjoinder of parties defendant in this, that as executor he was improperly united with himself individually and as surviving partner ; 2d, of improper union of several causes of action, viz. : a cause of action against him as executor upon the mortgage, and a cause of action against him individually and as surviving partner upon the promissory notes ; and 3d, no cause of action. His demurrer in his own right was the same, *mutatis mutandis*.

The demurrers were, after argument, sustained by the Court, with leave to the plaintiff to amend within ten days, which he declining to do, judgment was entered in favor of the defendants. From this judgment plaintiff appeals.

*D. Bixler*, for Respondent, in support of the demurrers.

I.   The surviving partner is improperly joined with the executor of the deceased partner.

1. Although the prayer of the complaints asks for no specific relief against William Gibb, except that he be foreclosed of all equity of redemption, yet the complaints contain all the allegations necessary to charge him as surviving partner. They aver—1st, that William and Daniel Gibb were partners under the name of Daniel Gibb & Co. ; 2d, that William and Daniel, partners by their

Savings and Loan Society *v.* Gibb.

partnership name, borrowed the money of plaintiff, and to secure its payment made their notes, of which one is set forth; 3d, that demand was made for payment of the notes, and Daniel, in his lifetime, and William refused, and William, since Daniel's death, refused to pay the same; and 4th, that the plaintiff had declared the entire sum to be presently due, of which William, executor, and in his own right had notice.

And notwithstanding the averment that William claimed an interest in the premises as devisee or otherwise, we are authorized by the other averments to conclude that he was made a defendant both as the surviving partner and as the claimant of such interest.

2. No action at law could be maintained against the executor upon the notes. (*Grant* v. *Shurter*, 1 Wend. 152.)

3. In this State, even in cases of joint and several contracts, the administrator or executor cannot be joined at law with the survivor, for one is charged *de bonis testatoris*, and the other *de bonis propriis*. (*Humphreys* v. *Yale*, 5 Cal. 176; *May* v. *Hanson*, 6 Id. 642.) See also *Voorhies* v. *Childs' Executor* (17 N. Y. 357).

4. The specific prayer of a bill in equity, though a demurrer will not lie to it as such, is nevertheless very important, and sometimes conclusive, as to the question of who are or are not proper parties. (Calvert Parties in Equity, *11–13; 15 Law Lib. 7, 8; Wigram Discovery, 74, 75.) This rule is equally applicable under our code of practice, especially in a case where the averments in the complaint are in their nature equally suited to different causes of action, and where the cause of action throws light upon the question of parties; and *vice versa*.

II. In making the mortgage of his separate property for the debt of his firm, Daniel Gibb was a partner becoming a surety for the partnership; and upon his death his executor may insist, that in any suit to charge the estate, the creditor shall aver and prove that he has first exhausted his remedy against the surviving partner; or at least, that the partnership is insolvent.

Upon the dissolution of a partnership by death, the entire assets pass to the surviving partner, and become the primary fund for the satisfaction of the debts of the firm, and the surviving partner is in the first place liable to the creditors. Hence the rule is in the

American Courts, as it formerly was in the English Courts until changed by Lord Brougham, that the creditors of a partnership cannot come into equity against the estate of a deceased partner, without alleging and proving that he has exhausted his remedies against the survivor; or at least, that the partnership is insolvent. (*Lawrence* v. *Trustees of Leake & W. Orphan House*, 2 Denio, 577, 586; 6 and 7 Id. 588, and 9 Id. 591–594; *Voorheis* v. *Baxter*, 17 N. Y. 354, 357; *Copcutt* v. *Merchant*, 4 Bradf. Sur. 18, 20; *N. River Bank* v. *Stewart*, Id. 254; *Higgins* v. *Freeman*, 2 Duer, 650; *Slatter* v. *Carroll*, 2 Sandf. Ch. 580; *Alsop* v. *Mather*, 8 Conn. 584, 7 and note *a*; *Reimsdyk* v. *Kane*, 1 Gall. 371, 384, 385; Dayton on Surrogates, 293–295; Willard's Eq. Jurispru. 719, 720; *Filley* v. *Phelps*, 18 Conn. 295, 301, 302; *Sturge* v. *Beach*, 1 Id. 509; *Caldwell* v. *Stillman*, 1 Rawle, 212.)

In this State, it is settled that the debt for which a mortgage is given is the principal thing, and the mortgage is but the incident. (*McMillan* v. *Richards*, 9 Cal. 407.)

In the present case, the notes for which the mortgage was made were a partnership debt, and such debt was and is the principal thing. As the holders of those notes, the plaintiffs below were and are creditors of the partnership of Daniel Gibb & Co. Consequently, the rule above stated applies.

It is no answer to our objections to say that these are bills merely to foreclose the mortgages as against the estate of Daniel Gibb and his executor as the representative thereof for several obvious reasons: In the first place, Daniel Gibb made the mortgages merely as a security for the payment of certain obligations of his firm. Hence his contract was that the property should. be liable for the debt only secondarily and after the assets of the copartnership had been exhausted. In the next place, he assumes no personal obligation by the mortgages which contain no express covenant for the payment of the money, and the only and full extent of which contracts is that certain property therein described is pledged as security for certain debts of another party, namely, the firm of Daniel Gibb & Co. The mortgages therefore are in this respect what are generally known as "dry mortgages," that is, mortgages in which nothing is bound but the property mortgaged,

and the mortgagor incurs no personal liability. (*Scott* v. *Fields*, 7 Watts, 360, 361; *Salisbury* v. *Phillips*, 10 Johns. 57.)

The result of this is that whatever might have been the case during the lifetime of Daniel Gibb, yet after his death, his entire estate, real and personal, including of. course the property mortgaged, being subjected by our probate law to the lien of the creditors, who are represented by the executor, the latter for them as well as for other parties interested in the estate, heirs, etc., may and should in these cases raise the objection that the plaintiff should first exhaust its claim against the partnership property, by a suit on the promissory notes, before resorting to the mortgages, which were given merely by way of secondary liability as security. (*Becket* v. *Selover*, 7 Cal. 238, 239.)

III. These bills cannot be maintained as bills merely to foreclose the mortgages against the estate of Daniel Gibb, under and by which mortgages he assumed no personal liability and on which there could be of course, no decree for a money judgment, and no execution for a deficiency as against the estate or the executor.

If these suits can be maintained as suits merely to foreclose the mortgages, the absurd consequences would be that in case of a deficiency upon a sale, a second suit would be necessary as against the surviving partner, which is inverting not merely the order of liability, but the order of proceedings as known and established in Courts of Law and Equity.

In those cases where, as here, the deceased partner was also a surety for the partnership, the rule has been enforced upon the objection of the executor. (*Averill* v. *Loucks*, 6 Barb. 470, 477; *Wilder* v. *Keeler*, 3 Paige, 167, 172, 176.)

It is a well established doctrine that joint creditors will not be permitted to reach the individual estate of the deceased partner until all the separate creditors are satisfied. (*North River Bank* v. *Stewart*, 4 Brad. Sur. 257 and cases cited.) And as the law confers upon the surviving partner the title to all the effects of the copartnership, with the burthen of paying the debts, it would be oppressive in many cases, and unjust in still more, if the creditor were permitted to resort to the deceased partner's individual property for payment, leaving the primary fund for such payment in

the possession of the surviving partner. And the presumption is that the primary fund is sufficient to meet the demands upon it. (*Voorhies* v. *Baxter*, 17 N. Y. 356; Probate Act, sec. 198; *Slatter* v. *Carroll*, 2 Sandf. Ch. 580.)

If the separate creditors have the right to require a resort to the primary fund, so also has the executor who is their representative. Vid. *Beckett* v. *Selover*, above cited, where the Court say: " The administrator is more the representative of the creditor than of the heirs. In all suits for the benefit of the estate, he represents both the creditors and the heirs; and in proceedings to sell property, he is not the sole representative of the estate, but the moving party on behalf of the creditors."

IV. Two causes of action are improperly united in the complaint; 1, a cause of action upon the mortgage against the Executor; and 2, a cause of action against the surviving partner upon the notes.

The liability of Daniel Gibb being limited, as already shown, to the property pledged, no judgment can be docketed against his estate for a deficiency on the sale as prayed, and the complaint in that respect shows no cause of action as against the executor. The prayer for specific relief throws light upon this point.

*O. L. Shafter*, for Appellant, in reply.

I. The objection that the surviving partner is improperly joined with the executor of the deceased partner goes upon the ground, that where one of two joint contractors dies, there can be no remedy against the estate of the deceased, until after all legal remedies have been exhausted against the survivor. To this objection there are several answers.

1st. If this were in fact an action upon a contract made by Daniel and William Gibb jointly, it might be maintained against Daniel's estate, without an averment that William Gibb, the survivor, was insolvent, or that he had been pursued at law to judgment, execution, and return *nulla bona*. In short, we deny the principle contended for.

We admit that in case of the death of one of two joint contractors, the remedy at law is against the survivor alone. (1 Chit. Pl. 36.) And we admit further, that by the doctrine formerly

held, the joint creditors had no claim whatsoever in equity against the estate of the deceased contractor, except when the surviving debtor was at the time, or subsequently became insolvent or bankrupt. But that doctrine has since been overturned ; and it is now held, " that in equity all partnership debts are to be deemed joint and several, and consequently that the joint creditors have in all cases a right to proceed at law against the survivors, and an election also to proceed in equity against the estate of the deceased partner, whether the survivors be insolvent or not. The consequence is that the joint creditors need not now wait until the partnership affairs are wound up and a final adjustment thereof is made, but they may at once proceed, as upon a joint and several contract, in equity against the estate of the deceased partner, although in any such suit the surviving partners must be made parties, as persons interested in taking the account." (See Story on Partnership, sec. 362, and the cases there cited ; *Bardwell* v. *Perry*, 19 Vt. 292.)

2d. But should the principle contended for by the respondents be admitted, it has no application to the case made in the complaint.

The complaint discloses two contracts : one a promissory note executed in effect by Daniel and William Gibb jointly, the other a mortgage contract executed by Daniel Gibb alone. Though these contracts are related to each other, they are in no sense identical or convertible. The giving of the notes did not even draw after it the giving of the mortgage contract as a necessity. It was executed by the several volition and several act of Daniel Gibb, and it was in short to all intents and purposes his several contract, given to secure another contract made by him jointly with his brother. Now this action is not based upon the joint contracts, nor is it brought to enforce those contracts *in personam* as against any one. It is founded upon the mortgage contract, and seeks redress, for a breach of one of its leading provisions, by acting upon the mortgaged lands *in rem*. On the joint contracts, to wit, the notes, the plaintiff could bring no such action, nor on them could the plaintiff in any event be entitled to any such redress.

The case actually presented, then, is without the scope of the

principle invoked by the respondents; for that contemplates a case of a joint contract, one of the joint obligors being dead; but this case differs from that in both these governing particulars.    To the mortgage contract there was but one signature and seal, and they were the signature and seal of Daniel Gibb.

Aside from what may be called the main contract contained in the mortgage, whereby the land was put in pledge as a security for the debt, there is a diversity of minor covenants contained in the mortgage, to all of which William Gibb is and has ever been a stranger.    Daniel Gibb covenants that "he will pay and discharge at maturity all taxes, street assessments, liens, and other incumbrances;" that if he fails to do so, then that the plaintiff may pay them, and claim two per cent. per month interest thereon; that in the event of foreclosure, counsel fees shall be allowed the plaintiff at the rate of five per cent. on the amount due, as a part of the costs of the action; and that upon that event a receiver may be appointed, with full power to collect the rents and profits until the mortgaged property shall be sold, his commissions and charges to be paid out of the avails.

These subordinate contracts are the several engagements of Daniel Gibb; they are found in the mortgage, but no one of them is inserted in the notes.    If they cannot be enforced against Daniel Gibb's estate directly, then they cannot be enforced at all.    As to them, they cannot be enforced against William Gibb as survivor, for he was never a party to them.    The question then is, are they dissolved by the death of the man who made them?

It is said, on behalf of the respondents, "that the mortgages contain no express covenants for the payment of the money." That is true; but it is also true, that Daniel Gibb covenanted and agreed, in the mortgages, "that if default should be made in the payment of any one or more of said promissory notes, that legal proceedings might forthwith be taken for the foreclosure of said mortgages for the payment of all moneys due to said Savings and Loan Society."    The contingency named has happened, and we are now seeking in this action to enforce the liability which this several covenant of Daniel Gibb created.    As to this covenant there is no survivorship.    True, Daniel Gibb does not bind himself

*in personam* to pay the notes, but having absolute dominion over the lands he, by his several acts, subjects them to a liability to pay the notes on the happening of a certain event. The joint promises contained in the notes bind the promissors personally; but they have no relations to the lands mortgaged, or to any other lands. The several covenant in question binds the land; it is through the intervention of that covenant alone, or an obligation akin to it implied by law, that the plaintiffs have or ever had any right to come upon the land, and if the plaintiffs cannot pursue the land until after they have exhausted their *in personam* remedies upon the joint promises, it must be for the reason that this several covenant was discharged by the death of Daniel Gibb, and not for the reason that its obligations " survived " to his brother.

3d. William Gibb is not joined as " surviving partner," as the objection assumes. He is nowhere called " surviving partner " in the complaint, nor is any personal relief asked against him as such. On the contrary, it is prayed that if a balance should remain after the avails realized on a sale of the mortgaged premises shall have been exhausted, that such balance should be certified to the Probate Court. William Gibb is made a party: first, as executor of the deceased mortgagor; and second, in his own right, on the ground that he " claims interests in and rights to the said premises as devisee of said Daniel Gibb," and the only relief asked against him is that his title as such devisee may be foreclosed.

II. To the second objection of the respondents, that " in making the mortgage of his separate property for the debt of his firm, Daniel Gibb was a partner becoming a surety for the partnership; and upon his death his executor may insist that in any suit to charge the estate the creditor shall aver and prove that he has first exhausted his remedy against the surviving partner, or at least that the partnership is insolvent "—we answer: 1st. Though the mortgage contract was a security for the debt, yet it is not a contract of " suretyship," for Daniel Gibb does not bind himself personally for the debt of another, (1 Par. Con. 493) but pledges his land for the payment of a debt which he himself owes jointly with another. The consideration of the mortgage moved to him, and none the less so for the reason that he shared the benefit of the

loan with his brother.   If he was a surety, he was one merely for the fulfillment of contracts which he had signed as a principal party, and which he in his lifetime was personally bound to perform. None of the principles applicable to the contract of suretyship could be worked in his behalf.   Could he in his lifetime have compelled his firm, by bill in equity, to pay the debt?   Could he have compelled the present plaintiffs to sue him and his brother *in personam* on the notes ?

2d.   Admitting that the mortgage contract was a contract of suretyship, we deny that the property mortgaged "would be liable only secondarily, and after the assets of the copartnership had been exhausted."

A surety as such may by bill compel the debtor to pay the debt (1 Sto. Eq. sec. 327) ; he may by bill compel the creditor to sue the debtor, if he, the surety, tenders adequate indemnity for costs and expenses (Id.) ; and if the surety pays the debt himself, he is entitled to an assignment of the claim, and to be subrogated to all securities which the creditor may have in his hands; but in no treatise or decision are there any traces of the doctrine that a creditor cannot pursue a surety until remedies against the principal debtor have been exhausted.   By paying off the debt for which he is bound, the surety can at any time put himself in a position to sue the principal.  (*Hartman* v. *Burlingame*, 9 Cal. 561 ; *Palmer* v. *Vance*, 13 Id. 553.)

*Wilkerson* v. *Daniels* (1 Iowa, 179) was an action to foreclose a mortgage executed by the defendant to secure a note made by three others.   It was held that the action was well brought, and still there was no averment that any proceedings had been taken against the makers of the note.   It was held also that the makers of the note were not proper parties defendants.   The last ruling must necessarily have proceeded upon the ground that the mortgage contract was not only the several contract of the defendant, but also upon the ground that the persons for whose benefit it was executed were neither party nor privy to its obligation.  (See also 2 Hil. Morts. 121 ; Coote on Morts. 354.)

3d.   If Daniel Gibb could not have insisted in his lifetime that the lands mortgaged were exonerated until after all *in personam*

remedies were exhausted upon the notes, and that he could not has already been shown, then his executor cannot so insist.

In respondents' brief we are reminded that "the debt is the principal thing, and the mortgage is but an incident," and from this we suppose that counsel would have us infer that whatever is true with regard to personal remedies upon the notes is equally true with regard to the remedy upon the mortgage. A mortgage is so far an incident to the debt that it will follow the debt, by operation of law, into the hands of an assignee; and also, if the debt is paid, the mortgage will be in effect satisfied. But because a mortgage is collateral to the debt, it by no means follows that where the debt is joint and the mortgage several that the latter is therefore joint in legal effect, or that because one is personal that therefore the other is personal, or that because the doctrines of survivorship have to do with the one that they therefore have the same relations to the other.

Counsel also suggest that "if these suits can be maintained as suits merely to foreclose the mortgages, the absurd consequences would be that in case of a deficiency upon a sale a second suit would be necessary against the surviving partner." The absurdity is not acknowledged. A gives a mortgage to secure the debt of B; the mortgage is foreclosed against A, the man who made it; the avails of the sale are inadequate to pay the debt; a personal action may be brought against B on his personal contract to recover the balance. In strict foreclosure, if the value of the premises fell below the amount of the debt, a personal action would lie on the bond or note to recover the difference. (Lovell v. Leland, 3 Vt. 581.)

And here, if the avails of the lands mortgaged should be inadequate to the payment of the debt, it may be true that the general estate of the mortgagor could not be reached for the balance, except through the personal contracts contained in the notes, and it might be necessary to submit also to the doctrine that the surviving partner should first be pursued as such; but in this there would be no legal absurdity, for it would be in strict keeping with the analogies above stated.

III.   Respondents have cited cases to show that "it is a well

established doctrine that joint creditors will not be permitted to reach the individual estate of the deceased partner until all the separate creditors are satisfied."

This position goes further than the one previously advanced; for if the position be a tenable one, then after the partnership funds had been exhausted in proceedings upon the notes against William Gibb as survivor, if an unsatisfied balance should remain, that balance could not be collected out of the estate of Daniel Gibb until all of his private debts had been paid.

1st. There is no such principle. The rule that separate creditors are to·be first paid out of separate property is not based upon any general principle of equity jurisprudence, but upon an express provision of the English bankrupt laws. (*Bardwell* v. *Perry et al.*, 19 Vt. 292.)

2d. The doctrine asserted cannot be invoked, except when it appears that there are separate creditors, and by them; and not by them even, except where it appears that the separate property is inadequate, or no more than sufficient to pay the separate debts. But here it does not appear that there are any separate creditors to be protected by the rule; there are no parties on this record alleging themselves to be separate creditors, and as such claiming the benefit of the rule. Although it may be true in a large sense, that an administrator " represents the creditors " of the deceased, as is insisted by counsel, and as was held in *Beckett* v. *Selover*, (7 Cal. 239) yet it does not appear that there are any private creditors of Daniel Gibb in the constituency of his executor; nor does it appear in any manner that the private estate of Daniel Gibb is not adequate for the discharge of every description of claim for which it is either primarily or secondarily responsible.

3d. The doctrine asserted contemplates the case of a creditor pursuing separate property upon a joint contract. Here the plaintiffs are doing nothing of the kind. They are seeking to reach the separate property upon the separate contract of Daniel Gibb, and the rule in question permits this to be done, how much soever it may be narrowed in its range.

4th. The doctrine in question contemplates a foray upon the separate estate at large, and has no application to the case of a

Dutton v. Warschauer.

creditor attempting to enforce a vested lien upon specific property. Under no circumstances can a creditor with a specific lien be delayed in his remedy upon it, unless a case is made out against him within the doctrines applicable to the "marshaling of assets." (1 Sto. Eq. chap. 13.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

We have carefully considered the objections taken by the defendants to the complaints in these cases, and are of opinion that they are untenable. The brief of the counsel of the plaintiff satisfactorily answers them. The Reporter will give a full synopsis of the briefs of the learned counsel in the report of the cases.

The judgment is reversed, and the cause remanded for further proceedings in both cases; and inasmuch as the executor has died since the argument, the judgments will be entered as of the first day of May, that day being previous to his death. (*Black* v. *Shaw*, 20 Cal. 68.)